**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **AMERICAN BANKERS** | : | |
| **ASSOCIATION, et al.,** | : | **Civil Action No. 1:05-CV-2247** |
| **Plaintiffs** | : | |
| | : | **(Chief Judge Kane)** |
| **v.** | : | |
| | : | |
| **NATIONAL CREDIT UNION** | : | |
| **ADMINISTRATION, et al.,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

Before the Court is an action under the Administrative Procedures Act ("APA"), 5 U.S.C.

§ 551 et seq., challenging an administrative order of the National Credit Union Administration

("NCUA"). The parties have extensively briefed two issues now before the Court for

determination: (1) the standard of review the Court should apply when considering the NCUA's

decision; and (2) the proper scope of discovery. For the reasons that follow, the Court finds that:

(1) the challenged action of the NCUA must be reviewed on the merits under the "arbitrary and

capricious" standard of § 706(2)(A) and for procedural errors under § 706(2)(D) of the APA; and

(2) that the agency's action must be evaluated based on the administrative record before the

Court.

**I.      BACKGROUND**

    **A.      Statutory Framework**

The Federal Credit Union Act ("FCUA"), 12 U.S.C. §§ 1751-1795k, provides for the

chartering and regulation of federal credit unions, which the act defines as "cooperative

association[s] organized . . . for the purpose of promoting thrift among [their] members and

creating a source of credit for provident or productive purposes." Id. § 1752(1). The National

1

Credit Union Administration ("NCUA") is the independent federal agency responsible for the governance of federal credit unions under the FCUA.  Id. § 1752a.  The NCUA is supervised by the National Credit Union Administration Board ("Board"), which consists of "three members, who are broadly representative of the public interest, appointed by the President, by and with the advice and consent of the Senate."  Id. § 1752a(b)(1).

Before a federal credit union may receive recognition by the NCUA, the credit union must prepare an "organization certificate," id. § 1753, which then must be approved by the Board, id. § 1754.  Before the Board may approve an organization certificate, the NCUA must undertake "an appropriate investigation" to evaluate three criteria: "(1) whether the organization certificate conforms to the provisions of this chapter; (2) the general character and fitness of the subscribers thereto; and (3) the economic advisability of establishing the proposed Federal credit union."  Id. § 1754.  Once the organization certificate is approved, the federal credit union is chartered and entitled to certain statutory benefits, most notably, tax-exempt status.  Id. § 1758.

The FCUA recognizes three categories of federal credit unions, distinguished by the credit union's membership: (1) single common-bond credit unions; (2) multiple common-bond credit unions; and (3) community credit unions.  Id. § 1759(b).  In 1998, Congress codified these categories (known as "fields of membership") in the Credit Union Membership Access Act ("CUMAA"), Pub. L. No. 105-219, after the United States Supreme Court invalidated the NCUA's interpretation of permissible fields of membership in National Credit Union Administration v. First National Bank & Trust Co., 522 U.S. 479 (1998).

As part of the CUMAA, Congress established the requirement that the service area of a community credit union must be limited to "a well-defined local community, neighborhood, or

rural district." CUMAA § 101. The CUMAA also provided that the Board would be required to "prescribe regulations defining the term 'well-defined local community, neighborhood, or rural district' for purposes of . . . (A) making any determination with regard to the field of membership of a [community] credit union; and (B) establishing the criteria applicable with respect to any such determination," id. § 103. Accordingly, the Board promulgated Interpretative Ruling and Policy Statement 99–1 ("IRPS 99-1"), which reflects the NCUA's interpretation of acceptable fields of membership. 63 Fed. Reg. 71,998-72,089 (Dec. 30, 1998).

## B. Factual Background

On February 16, 2006, the parties submitted to the Court the administrative record of the proceedings before the NCUA. (Doc. No. 26) (hereinafter "A.R. ___"). In their briefs, both parties cite extensively to the record, and for the purpose of this memorandum opinion, the Court will accept the following "facts" from the record:

On October 2, 2001, Members 1st Federal Credit Union ("Members 1st")[1] submitted an application to convert its existing charter to a community-credit-union charter serving eight counties in central Pennsylvania "situated in the heart of southern Pennsylvania." A.R. 1175, 1210. As part of its application to the NCUA, Members 1st described the desired eight-county region as a "well-defined local community" with "[t]he hub of the Community [located in] the bustling State Capital, Harrisburg, which is home to the offices of Pennsylvania's government." A.R. 1210.

---

[1] Members 1st was initially chartered in 1950 to serve "commissioned, enlisted, and civilian personnel of the United States Naval Supply Depot in Mechanicsburg, Pennsylvania." A.R. 1162. By the time it sought to convert its charter, Members 1st had grown to cover over 628 employee groups and had 83,190 members.

On October 17, 2001, the NCUA regional office denied the application after determining that Members 1st failed to demonstrate that the eight-county region "comprise[d] a single, local, well-defined community where residents interact or have common interest."  A.R. 1157. Members 1st requested that the NCUA reconsider its decision, and the NCUA agreed.  After reconsideration, however, the NCUA regional office again decided to deny the application because "there [was] insufficient evidence to establish that South Central Pennsylvania is a 'local' community where residents interact or have common interests . . . ."  A.R. 1103.

In November 2002, Members 1st submitted a second application in the form of a "draft," which included a proposed community of six (as opposed to eight) counties[2] and the Borough of Shippensburg, including that portion of Shippensburg located within Franklin County.  A.R. 884. Also, unlike the previous application, which defined the community as the "South Central Pennsylvania" region, the November 2002 draft application referred to the community as the "Capital Area Community."  A.R. 885.

The NCUA regional office reviewed the November 2002 draft application, and offered its comments.  The regional staff opined that Members 1st still would not meet the statutory requirement of a well-defined local community, but suggested if Members 1st refocused its application, Members 1st would substantially improve the chances for approval:

The requested area consists of two MSAs[3], and one county.  To tie

---

[2] These counties were Adams, Dauphin, Lebanon, Perry, York, and Cumberland counties. The previous application also included Franklin and Lancaster counties.

[3] MSAs, or Metropolitan Statistical Areas, are statistical geographic entities defined by the Office of Management and Budget and based upon data collected by the United States Census Bureau.  At all times relevant to the present litigation, MSAs were defined by standards promulgated in 2000.  65 Fed. Reg. 82,228-82,238 (Dec. 27, 2000).

> the MSAs together, it must be demonstrated there is interaction or
> common interests among the two.  A review of the draft application
> and research on the Internet suggests a good approach is to focus on
> the trade area formed by the [Interstate] 83 Corridor between
> Harrisburg and York. . . . Given the information provided in the
> application indicating transportation corridors all lead to Harrisburg,
> if it can be demonstrated they all lead toward the <u>Harrisburg-York
> corridor</u>, the notion of community would be considerably
> strengthened.

A.R. 877 (emphasis in original).  The review also identified a number of other areas where the

draft application could be modified to support approval.  A.R. 877-880.

In February 2003, Members 1st submitted a six-county community-charter application

that included the region identified in the November 2002 draft application, but incorporated the

core recommendations of the NCUA regional staff.  A.R. Vols. II-III.  On March 28, 2003, the

acting regional director of the NCUA prepared a Board Action Memorandum for the Board

recommending approval of the February 2003 application.  A.R. 10-11.  Additionally, the NCUA

General Counsel's office and Examination and Insurance Office offered their endorsement.  A.R.

243-44; A.R. 3-4.  Finally, on April 24, 2003, the NCUA Board unanimously approved the

February 2003 application, thereby granting Members 1st a community-credit-union charter.

A.R. 1-9.

Subsequent to the Board's approval of the Members 1st application, two other federal

credit unions – New Cumberland Federal Credit Union and AmeriChoice Federal Credit Union –

filed community-charter applications with the NCUA, seeking to operate in the same region as

Members 1st.  A.R. Vols. VI-VII.  The NCUA approved the applications.

C.     **Procedural Background**

On November 11, 2005, the American Bankers Association, the Credit Union Strategies

Task Force of Pennsylvania, The Legacy Bank, Adams County National Bank, and Mid Penn Bank (hereinafter "the Banks") filed suit against the NCUA to challenge the approval of the community charters.  (Doc. No. 1.)  On February 6, 2006, the Banks filed an amended complaint (Doc. No. 10), and the NCUA filed an answer to the amended complaint (Doc. No. 15).  On February 8, 2006, the Court granted a motion filed pursuant to Federal Rule of Civil Procedure 24 allowing Members 1st, New Cumberland Federal Credit Union, and AmeriChoice Federal Credit Union ("the Credit Unions") to join as intervening Defendants.  (Doc. No. 13.)  On February 8, 2006, the Credit Unions answered the amended complaint.  (Doc. No. 18).

The Court conducted a scheduling conference pursuant to Federal Rule of Civil Procedure 16(b) on April 12, 2006, at which the parties addressed the question of what standard of review applies to this action, and the question of whether the Court's review is limited to the agency record submitted or whether discovery may be ordered to supplement the record.  (Doc. No. 35.)  Thereafter, the parties submitted extensive briefs pursuant to Court order.  (Doc. Nos. 37-40.)

## II.  SCOPE OF JUDICIAL REVIEW

### A.  Scope of judicial review under the Administrative Procedures Act

The Banks brought this action under the Administrative Procedures Act ("APA"), 5 U.S.C. § 551 et seq., to challenge the NCUA's decision to approve the Credit Unions' charter applications.[4]  Section 706 of the APA governs the scope of judicial review of agency actions

---

[4] The parties agree that the NCUA's action in this case is properly characterized as an "informal agency adjudication," not a formal proceeding governed by the procedures set forth in 5 U.S.C. §§ 554, 556, 557.

and sets out six separate standards for courts to apply when reviewing agency decisions.[5]

Generally, courts must "hold unlawful and set aside agency action, findings, and conclusions

found to be . . .  arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

law." 5 U.S.C. § 706(2)(A).  Additionally, courts must set aside agency action that is contrary to

_____

[5] Section 706 provides that:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—
> . . . .
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be—
>
> > (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
> >
> > (B) contrary to constitutional right, power, privilege, or immunity;
> >
> > (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
> >
> > (D) without observance of procedure required by law;
> >
> > (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
> >
> > (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.
>
> In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

5 U.S.C. § 706.

the constitution, applicable statutes, or procedural requirements.  Id. §§ 706(2)( B), (C), (D).

Although not at issue in this case, agency findings in formal proceedings must be supported by

"substantial evidence."  Id. § 706(2)(E).  Finally, a reviewing court must set aside an agency's

action that is "unwarranted by the facts to the extent that the facts are subject to trial de novo by

the reviewing court."  Id. § 706(2)(F).

In this case, the Banks argue alternatively that the Court should set aside the NCUA's

decisions to grant the Credit Unions' charters under § 706 as: arbitrary and capricious in

violation of subsection (A); procedurally inadequate in violation of subsection (D); and

"unwarranted by the facts" as described in subsection (F).  The Court will address each in turn.

### B.      Judicial review under §§ 706(2)(A) & (D): The arbitrary and capricious standard and procedural requirements under the APA.

The parties agree that, in actions governed by the APA, §§ 706(2)(A) & (D) empower a

reviewing court to set aside agency actions that are arbitrary and capricious, or where the agency

failed to comply with legally required procedures.  The parties also agree that review of the

challenged NCUA action under §§ 706(2)(A) & (D) is proper.  The parties do not agree,

however, that § 706(2)(D) provides the Court "with any tangible standard of review that is

different from the arbitrary and capricious formulation or deserving of a lower level of

deference."  (NCUA's Br. in Opp'n 5-6.)

The NCUA contends that review under the arbitrary and capricious standard necessarily

involves review of agency's procedural defects: "[i]f the agency acted in violation of required

procedures, then the agency's action is arbitrary and capricious."  (Id.)  The Banks insist that

subsection (D) provides a separate, more searching, standard of review, not simply a superfluous

restatement of the arbitrary and capricious standard.  (Banks' Reply Br. 14-15.)

The Court agrees with the Banks that § 706(2)(D) provides an independent standard of review for a court: "Review of an agency's procedural compliance with statutory norms is an exacting one."  NRDC v. EPA, 683 F.2d 752, 760 (3d Cir. 1982) (quoting NRDC v. SEC, 606 F.2d 1031, 1048 (D.C. Cir. 1979)); see also Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 413 (1971) (Section 706 provides for "six separate standards"), abrogated on other grounds by Califano v. Sanders, 430 U.S. 99, 105 (1997).  Indeed, the Third Circuit has explicitly contrasted "[t]he exacting standard applicable in determining whether an agency has failed to comply with the procedural requirements for its action . . . with the deferential standard applicable to substantive challenges to agency action."  NRDC v. EPA, 683 F.2d at 760.  Of course, ensuring that an agency complied with legally required procedures does not permit a court to impose specific procedures on an agency.  Pension Benefit Guar. Corp. v. LTV Corp., 496 U.S. 633, 654-55 (1990) (when reviewing agency actions, "courts are not free to impose upon agencies specific procedural requirements that have no basis in the APA.").  Yet the clear terms of § 706(2)(D) provide that determining whether an agency fulfilled its procedural obligations is a proper subject of searching judicial review, and any agency actions that run afoul of procedural obligations found in statute or established rules are subject to invalidation.  It is not difficult to fathom an agency decision that is facially reasonable, but is rendered in violation of procedural directives.  In such a case, under the NCUA's approach, if the agency were to reach the right result, the Court must ignore even blatant procedural violations.  Such an approach would indeed, as the Banks argue, render § 706(2)(D) superfluous.

At this stage, the Banks have not identified the particular procedural deficiencies that they believe underlie the NCUA's decision or the specific relief such deficiencies might merit.

The Court will consider the merits of the Banks' § 706(2)(D) challenge to agency action should the Banks identify such deficiencies and the scope of appropriate relief.

### C.      De novo judicial review of agency action

In addition to the above-discussed standards of review, the Banks argue, in the alternative, that the Court should conduct a de novo review of the NCUA's decision.  In general, a reviewing court is not "empowered to conduct a <u>de</u> <u>novo</u> inquiry into the matter being reviewed and reach its conclusions based on such an inquiry." <u>Florida Power & Light Co. v. Lorion</u>, 470 U.S. 729, 744 (1985).  Where "Congress has simply provided for review, without setting forth the standards to be used or the procedures to be followed, . . . no de novo proceeding may be held." <u>United States v. Carlo Bianchi & Co.</u>, 373 U.S. 709, 715 (1963).

### 1.      The <u>Overton Park</u> exceptions

In <u>Overton Park</u>, the Supreme Court identified two exceptional situations where de novo review would be appropriate: (1) where an agency's factfinding procedures in adjudication are inadequate; and (2) where new issues, not raised before the agency, arise in enforcement proceedings of nonadjudicatory agency action.  401 U.S. at 415.  Two years later, in <u>Camp v. Pitts</u>, the Supreme Court restated the <u>Overton Park</u> exceptions: "de novo review is appropriate only where there are inadequate factfinding procedures in an adjudicatory proceeding, or where judicial proceedings are brought to enforce certain administrative actions."  411 U.S. 138, 141-42 (1973) (per curiam)[6].  More recently, the Third Circuit acknowledged the continued viability

---

[6] The NCUA argues that the first <u>Overton Park</u> category should not apply in this case because this case did not involve a formal adjudication.  <u>See</u> <u>United States v. Iron Mountain Mines, Inc.</u>, 987 F. Supp. 1250, 1259 (E.D. Cal. 1997) ("The first Overton Park exception only applies to 'formal adjudications' – as opposed to informal adjudications.").  This Court has not found any binding precedent suggesting that the <u>Overton Park</u> exceptions do not apply in

of these exceptions to the general disapprobation of de novo review.  NVE, Inc. v. Dep't Health

& Human Svcs., 436 F.3d 182, 189 (3d Cir. 2006).

Here, the Banks' position is that the first Overton Park exception should apply on the

grounds that the one-sided nature of the NCUA's factfinding rendered it procedurally

inadequate.  Specifically, the Banks argue that the factfinding procedures were inadequate

_____

informal agency actions.  To the contrary, Camp v. Pitts compels the opposite conclusion.  Camp
involved a decision by the Comptroller of the Currency to deny the respondents' application to
open a bank in South Carolina.  Much like the case sub judice, the Comptroller was required by
statute to conduct an ex parte investigation to evaluate the propriety of granting the application.
After conducting the investigation, the Comptroller denied the application, without a hearing, in
a brief letter.  The respondents asked the Comptroller for reconsideration, and after a
"supplemental field examination was conducted," id. at 139, the Comptroller again, in another
brief letter, denied the application without a hearing.  The respondents then sued the agency in
federal court.  After the district court granted summary judgment in favor of the Comptroller, the
Court of Appeals for the Fourth Circuit reversed on the grounds that "the Comptroller's ruling
was 'unacceptable' because 'its basis' was not stated with sufficient clarity to permit judicial
review," id. at 139-40 (citing Pitts v. Camp, 463 F.2d 632, 633 (4th Cir. 1972)), and directed the
district court to conduct a trial de novo on remand.
     In a brief per curiam opinion, the Supreme Court vacated the Court of Appeals'
judgment, and remanded the case to the district court to consider whether the Comptroller's
alleged failure to adequately explain the decision to deny the application "frustate[d] effective
judicial review," id. at 142-43, and if the district court found that the Comptroller's explanation
was not "sustainable on the administrative record made, then the Comptroller's decision must be
vacated and the matter remanded to him for further consideration," id.  The Court also held that
the Comptroller was not required to "hold a hearing or to make formal findings on the hearing
record when passing on applications for new banking authorities," id. at 140-41, and that the
district court was not permitted to conduct a de novo review of the Comptroller's decision, id. at
141-42.  After reciting the Overton Park exceptions, the Court stated that "the only deficiency
suggested in agency action or proceedings is that the Comptroller inadequately explained his
decision.  [But] that failure, if it occurred in this case, is not a deficiency in factfinding
procedures such as to warrant the de novo hearing ordered in this case."  Id. at 142.
     Camp, therefore, suggests that the NCUA's contention that the Overton Park exceptions
only apply to formal agency actions is incorrect.  The Comptroller's action in Camp was
informal, but the Supreme Court considered (albeit, summarily) the applicability of the Overton
Park exceptions.  However, Camp also forecloses the Banks' suggestion that the APA permits de
novo review of an informal agency adjudication whenever an agency does not allow for the
presentation of conflicting points of view.

because the NCUA failed to "allow for, solicit, accept, consider or include in the record evidence other than that presented by the Credit Unions." (Banks' Reply Br. 10.) Additionally, the Banks argue that the legislative history of the APA suggests that de novo review should be exercised when a court is asked to "rule on the validity of an adjudicatory decision made without the benefit of the vetting of evidence resulting from the presentation of conflicting points of view." (Banks' Reply Br. 14.) The Court disagrees.

De novo review is reserved for the extraordinary case.[7] The rare case is one like Porter v. Califano, 592 F.2d 770, 782 (5th Cir. 1979), where the Fifth Circuit Court of Appeals permitted a district court to conduct a de novo review of an agency's decision to suspend a plaintiff where the agency officials, who conducted the investigation and disciplinary processes that led to her suspension, began the investigation after the plaintiff had accused them of corruption. However, Porter remains atypical.[8] And as discussed more fully below, the parties have not presented any

---

[7] See, e.g., Gordon G. Young, Judicial Review of Informal Agency Action on the Fiftieth Anniversary of the APA: The Alleged Demise and Actual Status of Overton Park's Requirement of Judicial Review On the Record, 10 Admin. L.J. Am. U. 179, 214-16 & 214 n.145 (1996) ("There are almost no federal cases in which courts used either of the 'exceptions' recognized in Overton Park to justify a reviewing agency action on an evidentiary record made or augmented in a judicial proceeding. It should not be surprising that these exceptions were ipsit [sic] dixits on the part of the Overton Park Court, and remain so today. They run completely contrary to the Overton Park Court's own model of administrative law, however different that may be from the world of the APA framers." (emphasis added)).

[8] See Camp, 411 U.S. at 141-42 (lack of a hearing did not constitute inadequate factfinding procedures); see also Pac. Architects and Eng'rs Inc. v. United States Dep't of State, 906 F.2d 1345, 1348 (9th Cir. 1990); Acumenics Research & Tech. v. United States Dep't of Justice, 843 F.2d 800, (4th Cir. 1988); Woods v. Fed. Home Loan Bank Bd., 826 F.2d 1400, 1408 (5th Cir. 1987); Nat'l Org. for Women, Washington, D.C. Chapter v. Social Sec. Admin. of the Dep't of Health & Human Svcs., 736 F.2d 727, 747 (D.C. Cir. 1984) (opinion of Judges Mikva & McGowan); Upjohn Mfg. Co. v. Schweiker, 681 F.2d 480, 483 (6th Cir. 1982); United States v. Holcomb, 651 F.2d 231, 236 (4th Cir. 1981).

support for a conclusion that this case presents circumstances sufficiently extraordinary to demand de no review.

### 3. The Banks' allegation that the NCUA's factfinding procedures are inadequate

In this case, the Banks' concern is that the NCUA erred in finding that the six-county region in central Pennsylvania is a well-defined local community. Even if the Banks are correct, de novo review is not available under the <u>Overton Park</u> exceptions to establish that an agency's decision is factually deficient. Rather, de novo review can only be available in this case if the NCUA's factfinding procedures are inadequate to fulfill the statutory obligation to conduct an "appropriate investigation" as required by 12 U.S.C. § 1754.

The Banks allege that the NCUA's investigation was "fundamentally flawed" because the NCUA failed to provide public notice and because the NCUA otherwise directed the outcome by "coaching" the Credit Unions through the community-charter-application process. With respect to the alleged failure to give public notice, the court's review is properly limited under § 706(2)(D) to considering whether the procedures were legally required. If the Banks can establish noncompliance with required procedures, the Court will address the appropriate remedy responsive the failure, not undertake de novo review.

With respect to the allegations that the NCUA encouraged the Credit Unions to submit only those documents that would support their applications, such allegations do not automatically trigger a need for de novo review. The Banks argue that the proceedings suggest that the NCUA understood the charter-application process to be a fait accompli. For example, after Members 1st submitted its draft community-charter application, the NCUA Regional Office recommended that Members 1st omit information related to bus and rail service and media outlets

"as not being useful in demonstrating strong evidence of community."  A.R. 877.  Additionally, the NCUA suggested that "it is not the best strategy to focus on Harrisburg as the hub while ignoring the existence of York, the hub of York and the second MSA. . . The fact that the community has two significant trade areas/MSAs (Harrisburg and York, as defined by the Census Bureau) can't be overlooked."  Id.

The Credit Unions' response to these allegations is that the "interaction that [took] place between the credit unions and the NCUA staff during the application process is neither unusual nor inappropriate.  It is in fact typical of the regulatory process and of the relationship between federal regulatory agencies and the parties they regulate."  (Credit Unions' Br. in Opp'n 11.) Similarly, the NCUA argues that the agency's "willingness to assist regulated entities in complying with statutory and regulatory requirements" does not, as a matter of law, compromise the adequacy of the factfinding procedures.  (NCUA's Br. in Opp'n 19.)

In this case, the Banks raise serious public-policy questions regarding the wisdom of a statutory scheme that forecloses debate and permits only one view to be presented to the adjudicating agency.  However meritorious these concerns may be, the APA does not warrant their consideration in the context of an APA challenge.  The Banks' issue is with the statute – not the agency's application of it.

At this juncture, the Court is satisfied that de novo review is not warranted by the APA. Whether the NCUA's investigation with respect to the community-charter application met with the applicable standards is not presently at issue before the Court; rather, the narrow issue presented is whether the NCUA's factfinding procedures are legally deficient such that de novo review is available.  On that narrow issue, the Court finds that the factfinding procedures

employed by the NCUA were adequate to develop a record upon which judicial review can occur.  Thus, the exceptions identified in Overton Park do not apply, and the Court will not review the agency's decision de novo in this case.

## III.   SCOPE OF DISCOVERY

The Banks argue that they should be permitted to conduct discovery so that they can supplement the agency record lodged with the Court.  Accordingly, the parties have asked the Court to rule on the scope of discovery available to the Banks.  As a general rule, "a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency."  SEC v. Chenery Corp., 332 U.S. 194, 196 (1974).[9]  The role of a court reviewing an agency's decision is to "apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court," Florida Power & Light Co. v. Lorion, 470 U.S. 729, 743-44 (1985), not to "substitute its judgment for that of an agency," Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).  When applying the appropriate standard, "the focal point for judicial review should be the administrative record already in existence, not some new record made

_____

[9] From this rule, several corollaries follow.  The first corollary, as recognized by the Supreme Court, is that "if the administrative action is to be tested by the basis upon which it purports to rest, that basis must be set forth with such clarity as to be understandable."  Chenery Corp., 332 U.S. at 196.  Thus, when a district court must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment," Overton Park, 401 U.S. 416, "[i]f the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation," Florida Power & Light, 470 U.S. at 744.  The second corollary is that the record presented to the court must represent the administrative record that was before the agency when it made the decision; "post hoc" agency rationalizations are not permitted.  Overton Park, 401 U.S. at 419.

initially in the reviewing court." <u>Camp</u>, 411 U.S. at 142.  Accordingly, "[t]here is a strong

presumption against discovery into administrative proceedings born out of the objective of

preserving the integrity and independence of the administrative process."  <u>NVE</u>, 436 F.3d at 195.


The Banks argue that discovery is appropriate under the three recognized exceptions to

the general rule that judicial review must be limited to the administrative record.  The first such

exception, as described above, is de novo review.  The second exception permits discovery when

plaintiffs have made a "strong showing of bad faith or improper behavior."  <u>Overton Park</u>, 401

U.S. at 420.  The third exception provides that "examination of decisionmakers may be required

when such examination provides the only possibility for effective judicial review and when there

have been no contemporaneous administrative findings."  <u>Community for Creative</u>

<u>Non-Violence v. Lujan</u>, 908 F.2d 992, 997 (D.C. Cir. 1990).

None of these exceptions apply in this case.  De novo review is unavailable, and the

administrative record contains the contemporaneous findings of the NCUA.  Although the Banks

allege that the NCUA acted in bad faith by coaching the Credit Unions, the Banks offer no

support (and the Court is aware of none) for the proposition that the agency's willingness to meet

with Members 1st and discuss its charter application rises to the level of bad faith necessary to

warrant deviating from the firmly established rule that review must be limited to the

administrative record.  Rather, as discussed above, the NCUA argues that it had a regulatory

obligation to aid the Credit Unions in the community-charter-application process.  Furthermore,

any allegation of bad faith must be considered in light of the undisputed fact that the NCUA

rejected the initial, more expansive Members 1st community-charter application.  Absent clear

evidence that the NCUA ignored its legal responsibility to conduct an appropriate investigation under 12 U.S.C. § 1754, the Court's review of the agency's decision cannot extend beyond the administrative record.

Yet to be resolved however, is the Banks' contention that limited discovery should be allowed to ensure that the administrative record before the Court, as a factual matter, represents the "whole" administrative record subject to review.

### B. The Third Circuit's opinion in <u>NVE Inc. v. Department of Health and Human Services</u>

The Third Circuit's opinion in <u>NVE</u> controls the availability of discovery to show that the administrative record itself is materially deficient.  <u>NVE</u> involved a challenge to a regulation promulgated by the Food and Drug Administration ("FDA") related to the distribution of dietary supplements, which the plaintiff believed violated the APA.  Additionally, the plaintiff claimed that a provision of the Dietary Supplement Health and Education Act ("DSHEA"), 21 U.S.C. § 342(f)(1), permitted the district court to conduct a de novo review of the FDA's regulation.  In an interlocutory appeal, the Third Circuit rejected the plaintiff's argument that the DSHEA permitted de novo review of the regulation, and further held that review of the FDA's decision "must be limited to the administrative record before the FDA."  <u>Id.</u> at 195.

Importantly, the court in <u>NVE</u> also addressed the plaintiff's request to "seek[] discovery to determine whether the administrative record is complete."  <u>Id.</u>  In reaching the conclusion that the plaintiff would not be permitted to conduct such discovery, the court identified two situations where discovery might be permitted: (1) where plaintiff alleges that bias corrupted the agency's decision; and (2) where factors indicate that the administrative record submitted to the district court is incomplete.  While the Third Circuit found that neither of these situations applied in the

case, the court provided some guidance on the subject.

A litigant is generally permitted to discover evidence of improper bias.  In <u>NVE</u>, the court pointed to its prior holdings in <u>Grant v. Shalala</u>, 989 F.2d 1332, 1334 (3d Cir. 1993), and <u>Hummel v. Heckler</u>, 736 F.2d 91, 95 (3d Cir. 1984), for the proposition that discovery may be allowed to permit a plaintiff to demonstrate that an agency's decisionmaker was biased.  When improper bias permeates an agency's decisionmaking, no presumption of "integrity and independence" can exist.  However, even where bias is alleged, the scope of discovery is limited to that necessary for the plaintiff to "attempt to convince the district court that a remand to the [agency] for the taking of new evidence is appropriate," so that on remand "a new hearing must be held before [the agency] to determine the merits."  <u>Hummel</u>, 736 F.2d at 95.  Here, there is simply no allegation that the decisionmaker was *improperly* biased beyond the alleged procedural failure to solicit opposing views.  And, as above, the Banks have not proffered sufficient evidence to believe that the NCUA's decisionmaking in the instant case was somehow infected with bias.

The second situation – incompleteness – is a close cousin to the rule that judicial review must be limited to the administrative record.  Because the agency's decision must be evaluated based on the "whole record," 5 U.S.C. § 706, where the record presented to a court does not reflect the actual record considered by the agency, the Court cannot decide whether the agency's decision was arbitrary or capricious.  <u>Overton Park</u>, 401 U.S. at 419-20; <u>see also</u> <u>id.</u> at 423 ("This undoubtedly is why the record is sketchy and less than one would expect . . . .") (Blackmun, J., concurring).  Additionally, an incomplete record prevents judicial review of whether the agency followed appropriate procedural requirements.  <u>Higgins v. Kelley</u>, 574 F.2d 789, 793 (3d Cir.

1978).

In <u>NVE</u>, although rejecting the plaintiff's allegation that the 133,000-page administrative record was incomplete, the court suggested three factors that a district court should consider before permitting discovery: (1) the clarity of agency procedures that define the scope of an administrative record; (2) an indication that important documents were missing from the record; and (3) the size of the record.

The existence and clarity of agency rules defining the contents of the administrative record, and the process by which such a record is compiled, significantly aid a reviewing court in deciding whether a record is complete.  Where an agency has such rules, unless a plaintiff can make a threshold showing that the rules were not followed, discovery will not be permitted.  The court in <u>NVE</u> reasoned that a contrary rule "would undermine the presumption against discovery into administrative proceedings."  When no such rules exist,[10] or where the rules are vague or ambiguous, it is harder to discern, as a factual matter, whether the record presented to the reviewing court is the "whole" record required under § 706.

In <u>NVE</u>, the Third Circuit illustrated the applicability of the second and third factors by drawing distinctions between <u>NVE</u> and two cases relied upon by the plaintiff in that case: <u>Dopico v. Goldschmidt</u>, 687 F.2d 644 (2d Cir. 1982) and <u>Exxon Corp. v. Department of Energy</u>, 91 F.R.D. 26 (N.D. Tex. 1981).

In <u>Dopico</u>, several plaintiffs brought a number of challenges against the New York City

---

[10] Agencies are not required to establish such rules in informal adjudication under the APA, and the Court is not free to impose such procedural requirements.  <u>Pension Benefit Guar. Corp. v. LTV Corp.</u>, 496 U.S. 633, 654 (1990).  Nevertheless, their existence is a factor that should be considered when deciding whether to permit discovery on the factual issue of whether the record is complete.

Transit Authority and related local agencies and the federal Department of Transportation and

the Urban Mass Transportation Administration.  687 F.2d at 646.  The plaintiffs alleged that the

local defendants had failed to make mass-transportation services more accessible to the elderly

and handicapped, and that the federal defendants had violated federal law and the APA by

continuing to provide federal funding to the local defendants.  Id.  The district judge granted

summary judgment in favor of the federal defendants under the arbitrary and capricious standard

of the APA.  Id. at 648.  The Second Circuit reversed, holding that the factual issue of what

constituted the agency's "informational base" was in dispute, and that summary judgment could

not be granted "without at least permitting plaintiffs some limited discovery to explore whether

some portions of the full record were not supplied to the Court."  Id. at 654.  The court

accordingly remanded to the district court to permit such discovery.  Id.  Importantly for this

case, the court indicated that:

> [In this case, there is] a strong suggestion that the record before the
> Court was not complete: conspicuously absent were the
> [Transportation Improvement Program submissions] themselves for
> the relevant years.  It is almost inconceivable that such fundamental
> documents – the very basis for federal decision-making about mass
> transit grants – would not have been part of the administrative record.

Id.

In NVE, The Third Circuit distinguished Dopico in two respects: (1) in NVE, the

plaintiffs challenged the FDA's rulemaking, whereas in Dopico, the plaintiffs challenged the

federal defendants' (adjudicative) decision to provide federal funds; (2) in Dopico, unlike in

NVE, the administrative record "lacked the fundamental documents that would have formed the

very basis for the agency's decisions about the mass transit grants."  NVE, 436 F.3d at 195.

Because the plaintiff in NVE failed to "demonstrate[] the presence of any comparable factors in

this case," the court found that discovery was not appropriate.  Id.

Exxon presents another view of incompleteness.  Exxon involved a dispute between Exxon and the Department of Energy ("DOE") related to a DOE agency decision that "Exxon violated the agency's Mandatory Price Regulations by discontinuing acceptance of Bank Americard and Master Charge credit cards."  91 F.R.D. at 28.  Specifically at issue before the court was the availability and scope of discovery related to the basis for the agency's decision. The court concluded that discovery was available because "Exxon [had] made a strong showing that the Administrative Record certified to this Court is incomplete.  Incompleteness is evident from the record's face."  Id. at 34.  However, the court carefully noted that "[o]nce this Court is assured that all materials considered by the agency have been proffered, discovery has served its purpose."  Id.

In NVE, the court distinguished Exxon on the grounds that Exxon involved "a 126-page record that was incomplete on its face."  NVE, 436 F.3d at 196.  However, the court indicated that while "the size of the record alone is not dispositive of the question of whether discovery is appropriate . . . the size of the record is certainly a factor that a court should consider in deciding whether to take the unusual step of permitting invasive discovery into administrative decision-making."  Id.

In brief summary then, NVE provides substantial guidance on the question of whether parties should be permitted to discover additional materials beyond the administrative record. Generally, the strong presumption is that such discovery is not permitted.  However, in two situations – bias and incompleteness – such discovery is permitted, but only insofar as to demonstrate that a remand to the agency would be appropriate.  In the case of bias, discovery is

permitted for the purpose of making a threshold showing that the agency decisionmaker's "independence and integrity" was compromised.  In the case of incompleteness, if factors such as the clarity of agency rules related to the content of an administrative record, the inclusion of critical documents, and the physical size of the record, weigh in favor of a plaintiff, discovery is permitted.  In either case, such discovery would still be limited to that required to demonstrate that the record was incomplete.

### C.   The Banks' request for discovery

In this case, the Banks request discovery of three categories of evidence beyond the administrative record: (1) evidence related to whether the NCUA complied with its regulatory obligation to formally identify "[a]ll documents considered in connection with any action" before the Board; 12 C.F.R. § 791.17(b); (2) evidence related to whether the NCUA-compiled record is incomplete; and (3) evidence related to alleged bias in the NCUA's factfinding process. The first two categories relate to completeness, while the third relates to bias.  The Court will address each in turn.

First, the Banks seek discovery of evidence to determine whether the Board complied with its regulatory requirement to identify all documents considered before the Board in the minutes.  According to the Banks, the designated administrative record is overinclusive because the Board may not have actually considered the documents contained within it.  The thrust of their argument is that the Court must "review the decision of the Board on the record before the Board, not on a collection of documents compiled for the purposes of litigation."  (Banks' Br. 17.)  The Banks' argument is misplaced.  As the NCUA and Credit Unions rightly contend, an administrative record is not limited to those documents actually considered by the Board.

<u>Buckingham Twp. v. Wykle</u>, 157 F. Supp. 2d 457, 466 (E.D. Pa. 2001) ("[A] document need not literally pass before the eyes of the final agency decisionmaker to be considered part of the administrative record.")  Here, it is highly unlikely that the individual members of the Board carefully parsed through each line, page, and document included in the administrative record, but the record itself is not improperly overinclusive as long as the documents included were considered by the agency, either directly or indirectly.  <u>Exxon</u>, 91 F.R.D. at 33.  The Court therefore finds that the Banks' first discovery request is not warranted.

Second, the Banks seek discovery of evidence related to whether the designated administrative record includes evidence that the agency considered, but was left out of the record.  The Banks' position is that the designated record is underinclusive because the agency intentionally or negligently left out documents that would tend to discredit the Banks' conclusions.  Here, the three <u>NVE</u> factors weigh against permitting limited discovery.  Under the first <u>NVE</u> factor, although the NCUA does not appear to have any identifiable procedures that describe what information must be included in a record, the NCUA Regional Director submitted a sworn declaration that states that he is "familiar with [the designated] Administrative Record" and that the record "constitutes the administrative record relied upon by the NCUA in considering and approving the applications" at issue.  (Decl. of Edward P. Dupcak ¶¶ 6-7.)  Because "[a]gency action is entitled to a presumption of regularity," <u>Kamara v. Attorney General of U.S.</u>, 420 F.3d 202, 212 (3d Cir. 2005), the Court finds that the first <u>NVE</u> factor does not militate in favor of discovery.

The second and third <u>NVE</u> factors weigh strongly against permitting discovery.  Although the Banks have provided examples of "gaps" in the record, the Banks have not met

their burden of showing that any critical documents one would expect to find in the record are missing.  Specifically, the Banks point out that the record does not contain: (1) certain documents related to specific meetings and correspondence between the Credit Unions and representatives of the NCUA;[11] (2) certain procedural documents filed with the NCUA;[12] and (3) documents "attached" to memoranda and prior applications.  The NCUA notes that the record actually does contain the attachments.  Nevertheless, as discussed before, the parties agree that the agency action at issue in this case is characterized as an informal adjudication, and that the NCUA is not obligated to include such documents in the record.  Certainly, if the record failed (for example) to include the Credit Unions' community-charter applications, or the Board Action Memorandum, or the Board meeting's transcript, or some other critical document (like in the case of Dopico), the Court could find that the record is materially incomplete.  That is not the case here.  The cited gaps in the record do not frustrate effective judicial review.  The document spans seven volumes and over 2,000 pages.  It includes the community-charter applications, the Board Action Memorandum, and the transcript of the meeting in which the Board approved the applications.  Absent a clear showing that the "information base" that the agency relied upon was materially different than the record submitted to the Court, the APA prohibits discovery.  Thus,

---

[11] For example, in a September 5, 2002, letter, a representative of Members 1st referred to a meeting that took place on August 29, 2002.  According to the letter, in the course of that meeting, the NCUA made "constructive suggestions to improve [the community-charter] application."  However, the record does not disclose any information related to what transpired at the meeting, any correspondence prior to the meeting, or any indication as to what suggestions were made.

[12] For example, on several occasions, the Credit Unions requested that the NCUA extend the time for consideration of the applications, but the record does not include any documents pertaining to the requests or the reasons for granting them.

the Banks' second discovery request will be denied.

Finally, the Banks are not entitled to discover what factfinding the NCUA employed in this case.  Although Overton Park provides for de novo review when factfinding procedures are inadequate, there is no question that the NCUA has developed an administrative record upon which the Court can apply the appropriate standard of review under the APA.  Because "[t]here is a strong presumption against discovery into administrative proceedings born out of the objective of preserving the integrity and independence of the administrative process," NVE, 436 F.3d at 195, no discovery of the factfinding procedures employed by the NCUA shall be permitted.

## IV.    CONCLUSION

In conclusion, de novo review is not permitted in this case.  Accordingly, the Court will not review the NCUA's decision under § 706(2)(F) of the APA.  However, the Court will evaluate the action under §§ 706(2)(A) and (D).  The Banks' discovery requests will be denied, and review of the NCUA's decision will be conducted on the basis of the record presented to the Court.  An appropriate order will follow.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **AMERICAN BANKERS** | : | |
| **ASSOCIATION, et al.,** | : | **Civil Action No. 1:05-CV-2247** |
| **Plaintiffs** | : | |
| | : | **(Chief Judge Kane)** |
| **v.** | : | |
| | : | |
| **NATIONAL CREDIT UNION** | : | |
| **ADMINISTRATION, et al.,** | : | |
| **Defendants** | : | |

## ORDER

**AND NOW**, on this 14th day of September, 2007, upon due consideration of the arguments set forth in the parties' briefs, and for the reasons set forth in the accompanying memorandum, **IT IS HEREBY ORDERED** that Plaintiffs' request for discovery is **DENIED**.

**IT IS FURTHER ORDERED THAT** a telephone conference will be held on October 10, 2007, at 9:15 a.m. to discuss issues related to case management.  Plaintiff's counsel shall initiate the call.  The court's telephone number is 717-221-3990 for purposes of this conference call.

 S/ Yvette Kane_____
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania